Nathanael R. Rulis, Esq., SBN 11259
n.rulis@kempjones.com
Madison Zornes-Vela, Esq., SBN 13626
m.zornes-vela@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
(702) 385-6000

Jonathan P. Wolfert (*pro hac vice* application forthcoming)
jwolfert@seyfarth.com
Jeremy Schachter (*pro hac vice* application forthcoming)
jschachter@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Phone: (212) 218-5500

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| BLITZ NV, LLC,<br><br>               Plaintiff,<br><br>     v.<br><br>INTERACTIVE GAMES TECHNOLOGIES INC. formerly i3 INTERACTIVE INC.,<br><br>               Defendant. | Case No.  2:21-cv-01890-JCM-DJA<br><br>**DEFENDANT INTERACTIVE GAMES TECHNOLOGIES INC.'S MOTION TO DISMISS OR OTHERWISE STAY THIS ACTION**<br><br>**[ORAL ARGUMENT REQUESTED]** |

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ......................................................................................... 1

II. BACKGROUND ............................................................................................................... 2

    A.    The Parties ............................................................................................................ 2

    B.    The Business Arrangement .................................................................................. 4

    C.    Relevant Provisions of the Master Agreement & i3's Use of the Goat Skull .................. 5

    D.    The Canadian Action ........................................................................................... 6

    E.    The Instant Action ................................................................................................ 7

III. ARGUMENT ................................................................................................................... 8

    A.    This Court Should Dismiss Under the Doctrine of Forum Non Conveniens. ................. 8

        1.    Canada Is an Adequate Alternate Forum. ................................................. 9

        2.    The Private Interest Factors Strongly Favor Dismissal. ........................ 9

        3.    The Public Interest Factors Strongly Favor Dismissal. ...................... 11

    B.    The Court Should Dismiss this Action for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6). .................................................................................................. 14

    C.    The Court Should Dismiss this Action for Lack of Personal Jurisdiction Over i3 .......... 16

        1.    There Is No General Jurisdiction Over i3. ............................................. 17

        2.    There Is No Specific Jurisdiction Over i3 .............................................. 17

IV. CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ................................................................................. 16, 18

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........................................................................................ 18

*Ayco Farms, Inc. v. Ochoa*,
862 F.3d 945 (9th Cir. 2017) ....................................................................................... 8, 13

*Bellagio, LLC v. Bellagio Car Wash & Exp. Lube*,
116 F. Supp. 3d 1166 (D. Nev. 2015) ............................................................................. 18

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ........................................................................................ 16

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ..................................................................................... 8, 11

*Chavez v. Dole Food Co.*,
836 F.3d 205 (3d Cir. 2016) ........................................................................................... 17

*Chavez v. Robinson*,
12 F.4th 978 (9th Cir. 2021) .......................................................................................... 19

*Copitas v. Fishing Vessel Alexandros*,
20 F. App'x 744 (9th Cir. 2001) ..................................................................................... 12

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
61 F.3d 696 (9th Cir. 1995) ........................................................................................... 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................................................................................................... 17

*Edwards v. Juan Martinez, Inc.*,
506 F.Supp.3d 1061 (D. Nev. 2020) ............................................................................... 17

*EEOC v. Arabian Amer. Oil Co. (Aramco)*,
499 U.S. 244 (1991) ....................................................................................................... 15

*Evanston Ins. Co. v. W. Cmty. Ins. Co.*,
13 F. Supp. 3d 1064 (D. Nev. 2014) ............................................................................... 16

*Ferris v. Wynn Resorts Ltd.*,
462 F. Supp. 3d 1101 (D. Nev. 2020) (Navarro, J.) .......................................................... 2

*In re Icenhower*,
755 F.3d 1130 (9th Cir. 2014) ...................................................................................... 2, 4

*J. K. J. v. City of San Diego*,
   --- F.4th ----, 2021 WL 5292193 (9th Cir. Nov. 15, 2021) ........................................ 14

*JoshCo Tech, LLC v. Does 1-4*,
   2020 WL 6273897 (D. Nev. Oct. 26, 2020) .......................................................... 19

*Jovanovic v. BluForest, Inc.*,
   2013 WL 129427 (D. Nev. Jan. 9, 2013) (Hicks, J.) ..................................... 9, 10, 14

*Juniper Networks, Inc. v. Andrade*,
   2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) .............................................. 9, 10, 12

*Lewis v. Liberty Mut. Ins. Co.*,
   953 F.3d 1160 (9th Cir. 2020) ............................................................................... 9

*Manetti-Farrow, Inc. v. Gucci Amer., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ............................................................................... 10

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017) ............................................................................. 16

*Moss v. Tiberon Minerals Ltd.*,
   334 Fed. Appx. 116 (9th Cir. 2009) ...................................................................... 9

*Packingham v. North Carolina*,
   137 S. Ct. 1730 (2021) .......................................................................................... 6

*Prescott v. Slide Fire Sols., LP*,
   341 F. Supp. 3d 1175 (D. Nev. 2018) .................................................................. 19

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ..................................................................... 9, 16, 17

*Seals-McClellan v. Dreamworks, Inc.*,
   120 Fed. Appx. 3 (9th Cir. 2004) .................................................................. 12, 14

*Southport Lane Equity II, LLC v. Downey*,
   177 F. Supp. 3d 1286 (D. Nev. 2016) .................................................................. 16

*State Street Global Advisors Trust Co. v. Visbal*,
   431 F. Supp.3d 322 (S.D.N.Y.) ........................................................................... 15

*Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*,
   24 F.3d 1088, 1095096 (9th Cir. 1994) ................................................................ 15

*Takiguchi v. MRI Int'l, Inc.*,
   2015 WL 6661479 (D. Nev.) (Oct. 29, 2015) (McKibben, J.) ................................ 8

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ............................................................................... 11

**Federal Statutes**

Copyright Act.......................................................................................................... 15

**State Statutes**

Nev. Rev. Stat. § 14.065(1)...................................................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 16

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 14, 16

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Interactive Games Technologies Inc. ("i3" or "Defendant"), by and through its undersigned counsel, hereby moves to dismiss the complaint of Plaintiff Blitz NV, LLC ("Blitz" or "Plaintiff") in its entirety, or, in the alternative, seeks a stay of the action pending the resolution of a parallel Canadian proceeding currently being litigated in the Ontario Superior Court of Justice.  This Motion is made and based upon the following Memorandum of Points and Authorities, the Declaration of Troy James Grant ("Grant Decl.") and exhibits attached thereto, the Declaration of Jeremy Schachter ("Schachter Decl.") and exhibits attached thereto, the Declaration of Nathanael Rulis ("Rulis Decl.") and exhibits attached thereto, the pleadings and papers on file, the oral argument of counsel, and such other or further information as this Honorable Court may request.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### PRELIMINARY STATEMENT

This case should be dismissed for the simple reason that it concerns a contract dispute that is already being litigated in Canada.  It is nothing more than an improper attempt to force i3 to fight a war on two fronts, one of which (this forum) has no connection to i3 or the underlying dispute.

As Plaintiff admits, its principal is Dan Bilzerian, "who is personally known by" the goat skull design (the "Goat Skull") put at issue in this case.  Dkt. No. 1 ("Complaint") ¶ 9.  Bilzerian explicitly authorized i3 to use the Goat Skull pursuant to an agreement entered into in Canada, governed by Canadian law, and containing a Canadian forum selection clause.  Although Plaintiff mentions the Canadian agreement in the Complaint  (Complaint ¶¶ 26-29), it omits completely that (a) it authorizes i3 to use the Goat Skull in the manner complained of in the Complaint, and (b) Bilzerian is currently suing i3 over that same agreement in an action he commenced eight months ago in the Ontario Superior Court, captioned *Bilzerian v. Interactive Games Technology Inc. et al.*, File No. CV-21-00660636-0000 (the "Canadian Action").

The only claim Plaintiff asserts here is for copyright infringement of the Goat Skull, which can only proceed if i3 used it without authorization.  The agreement referred to in the Complaint establishes

that i3 unequivocally had that authorization.  Moreover, authorization in this case is purely a question of *Canadian* contract law, and the relevant Canadian contract is already being litigated in Canada.

Finally, Plaintiff has not alleged (because it cannot allege) that i3 has sufficient contacts with Nevada to justify this Court's personal jurisdiction over i3.  Given those facts, given the fact that Plaintiff fails to state a claim for unauthorized use of the Goat Skull, and given the fact that a parallel proceeding is underway in a forum that is far more appropriate to adjudicate the issues presented here, the Court should dismiss this action, or (at the very least) stay it pending the outcome of the Canadian Action.

## II.

## BACKGROUND

### A.    The Parties

Plaintiff is a Nevada LLC that, on information and belief, has only one member: Dan Bilzerian (or an entity controlled by him).[1]  According to his LinkedIn profile, Bilzerian is the "Founder, Chairman, & CEO @ Ignite International Brands Limited" and is based in Toronto, Ontario, Canada.[2]

In the Canadian Action, Bilzerian alleges that he "is one of the world's leading social media influencers."[3]  On the website for Ignite International Brands, Ltd. ("Ignite")—a Canadian company of which Bilzerian is the CEO, Founder, and Chairman[4]—Bilzerian claims that he rose to prominence as a

---

[1] *See* Dkt. No. 2, Certificate of Interested Parties ¶¶ 2, 3 (identifying Goat Works LLC as the manager of Plaintiff and Bilzerian as the Manager of Goat Works).

[2] *See* Schachter Decl., Ex. 1 (Dan Bilzerian's LinkedIn profile); *see also* https://www.linkedin.com/in/dan-bilzerian-330155200/?miniProfileUrn=urn%3Ali%3Afs_miniProfile%3AACoAADNHhJQBUzK2J_6PVabxj2jrB3qjWOdf-S0.  This website, and others that are cited herein but not referenced in the Complaint, are provided for context only. Although the Court may take judicial notice of "publicly accessible websites whose accuracy and authenticity is not subject to dispute," *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1117 (D. Nev. 2020) (Navarro, J.), the Court need not rely on them to rule on i3's Motion.

[3] Schachter Decl., Ex. 2 (Statement of Claim filed by Bilzerian in the Canadian Action (the "Canadian Complaint") ¶ 3.  The Court may take judicial notice of any "fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, including court filings and other matters of public record." *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

[4] *See* n. 2 *supra*; *see also* https://ignite.co/pages/investor-relations.

professional poker player, allegedly earning upwards of $50 million per year.[5]  Whether Dan Bilzerian actually amassed his wealth from poker has been a subject of public debate;[6] some suggest the bulk of his money comes from his father, Paul Bilzerian, a prominent corporate takeover specialist convicted of various securities laws violations in the 1980's.[7]  Whatever the source of the younger Bilzerian's wealth, however, neither it nor his recognition and association with poker is in dispute.

The Goat Skull is a symbol of Dan Bilzerian and his personal brand.  Plaintiff admits that Bilzerian "is personally known by" the Goat Skull.  Complaint ¶ 9.  The Goat Skull is used as the profile picture displayed to Bilzerian's more than 32 million followers on Instagram.[8]  It is the logo for his personal website about all things Dan Bilzerian, bilzerianentertainment.com.[9]  It is also used as the logo for Ignite, which itself trades on an association with Bilzerian.[10]

Plaintiff is yet another extension of Dan Bilzerian himself.  It is the entity through which Bilzerian occasionally purports to control and enforce his personal brand and related intellectual property ("IP").  The National Arbitration Forum concluded as much in a dispute over other Bilzerian IP, finding that "Blitz NV, LLC is a Nevada limited liability company that controls and enforces Complainant Dan Bilzerian's brand," and thus "treat[ing] them as a single entity in this proceeding."[11]

---

[5] *See* https://ignite.co/pages/investor-relations.  Ignite is a Canadian company headquartered in Ontario, Canada and traded on the Canadian Securities Exchange under the symbol BILZ.  *See* https://finance.yahoo.com/news/ignite-files-q3-2021-financial-140000966.html.  The Complaint identifies Ignite as Plaintiff's licensee.  Complaint ¶ 10.

[6] *See Did Dan Bilzerian Win His Money in Poker?*, https://upswingpoker.com/dan-bilzerian-poker-money.

[7] *See* Rothfeld, Reagan, *A Maze of Paper: SEC Judgment Against Raider Paul Bilzerian: $62 Million. Collected: $3.7 Million*, WALL STREET JOURNAL (2014), https://www.wsj.com/articles/for-decades-ex-corporate-raider-holds-off-sec-effort-to-collect-62-million-judgment-1410892550.

[8] *See* https://www.instagram.com/danbilzerian/.

[9] *See* https://bilzerianentertainment.com/.

[10] *See* https://ignite.co/; *see also* Complaint ¶ 10 (identifying Ignite as a licensed user of the Goat Skull).
[11] Schachter Decl., Ex. 3 (NAF Decision).  The Court may take judicial notice of any "fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, including court filings and other matters of public record."  *In re Icenhower*, 755 F.3d at 1142.

1   i3 is a Canadian corporation with offices in Vancouver, British Columbia and Toronto, Ontario.

2   Complaint ¶ 3; Grant Decl. ¶ 3.  i3 is in the online gaming business.  Specifically, i3 owns a suite of

3   brands providing online sports betting, casino, and poker products and services to consumers in Canada

4   and India.  Grant Decl. ¶ 4.  i3's brands are Blitzbet, Blitz Poker, and Blitz Pools.  *Id.*

5   Blitzbet is an online sports betting platform operated through the website www.blitzbet.eu (the

6   "Blitzbet Site").  Grant Decl. ¶ 5.  The services offered through i3's Blitzbet Site are only available in

7   Canada.  *Id.*  i3 also owns the domain www.blitzbet.com.  Depending on where one is located, this

8   domain either redirects, or requires a login, to the Blitzbet Site.  *Id.* ¶ 6.  There is no content at the

9   blitzbet.com domain.  *Id.*; *see also* Schachter Decl., Ex. 4; Rulis Decl., Ex. 1.[12]

10   Blitz Poker is an online poker platform operated through the website www.blitzpoker.com (the

11   "Blitz Poker Site").  Grant Decl. ¶ 7.  The services offered through i3's Blitz Poker Site are only

12   available in India.  *Id.*[13]

13   While not relevant to this action, i3's third gaming brand, Blitz Pools, is a fantasy sports and

14   pooled betting operation operated through the website www.blitzpools.com.  Grant Decl. ¶ 8.  Like

15   Blitz Poker, i3's Blitz Pools services are only available in India.  *Id.*

16   i3 maintains an informational website about its business: www.i3company.com (the "i3 Site").

17   Grant Decl. ¶ 10.  The i3 Site provides information about i3 and its brands, identifies i3's executive

18   team, provides investor information, etc.  *Id.*  The i3 Site is not interactive.  It does not offer goods or

19   services for sale.  *Id.*  Nor is it promoted or otherwise directed to consumers.  *Id.*  The i3 Site exists

20   solely to provide information about i3 and its business.  *Id.*[14]

21   **B.    The Business Arrangement**

22   In or around the summer of 2018, i3 and Bilzerian began discussing a potential business

23   arrangement through which Bilzerian would associate with i3 and its gaming brands.  Grant Decl. ¶ 11.

24   The thrust of these discussions was that Bilzerian would use his personal brand and social media

---

[12] Plaintiff expressly incorporates the Blitzbet Site (blitzbet.edu) and blitzbet.com into the Complaint at ¶¶ 6, 11.

[13] Plaintiff expressly incorporates the Blitz Poker Site (blitzpoker.com) into the Complaint at ¶¶ 5, 11, 14.

[14] Plaintiff expressly incorporates the i3 Site into the Complaint at ¶¶ 4, 11, 12, 13, 14.

following to promote and endorse i3's online gambling services. *Id.* In exchange, i3 would compensate Bilzerian generously with fixed scheduled payments, performance-based bonus opportunities, and an equity interest in i3's gaming business. *Id.*

On November 6, 2018, Representatives for i3 and Bilzerian signed a Business Development Agreement ("BDA") and Social Media Influencer Agreement ("SMIA"). Grant Decl. ¶ 12. i3 and Bilzerian modified portions of the BDA and SMIA on April 1, 2020 (the "Amendment") (the Amendment together with the BDA and SMIA, collectively, the "Master Agreement"). *Id.*; *see also id.*, Exs. 1-3.

**C.     Relevant Provisions of the Master Agreement & i3's Use of the Goat Skull**

The SMIA broadly defines the term "Intellectual Property" as "all intellectual property, including [*inter alia*] right in designs, copyrights, [and] trademarks." SMIA § 1. The SMIA then gives i3 "a worldwide, non-exclusive, irrevocable, perpetual license to use" Bilzerian's IP "in order to promote the brand of Blitzbet, unless otherwise agreed between the parties." *Id.* § 8.1. The Amendment did not alter i3's right to use Bilzerian's IP to promote the i3's gaming brands. *See generally* Amendment.

Accordingly, and as admitted by Plaintiff in the Complaint, i3 began using Bilzerian's IP, including the Goat Skull *after* the November 6, 2018 and April 1, 2020 execution of the agreements comprising the Master Agreement. Complaint ¶ 25 ("i3 established its Website on August 26, 2019 and . . . has been utilizing the [Goat Skull] Copyrights since that time or at least since August 27, 2020 when it updated the Website starting at that time."). i3 used the Goat Skull as part of the Blitzbet and Blitz Poker brands, including on the Blitzbet Site, the Blitz Poker Site, and in social media. Grant Decl. ¶ 14.

There is no question that i3's use of the Goat Skull was authorized by Bilzerian. The Master Agreement makes this clear. In addition, Bilzerian repeatedly admits throughout the Canadian Complaint that he was aware of and assented, or otherwise did not object, to i3's use of the Goat Skull in advertising online. *See* Canadian Complaint ¶¶ 27-28 ("i3 periodically posted . . . . a Goat Skull logo, a registered mark which Dan commonly uses as his logo" in advertising online); *id.* ¶ 29(c)

("Dan's logo is on this post [by i3] and *he 'liked' this post*.") (emphasis added);[15] *id.* ¶ 30 ("i3 periodically posted, or caused to be posted, approximately 70 further social media posts . . . . All of these posts included text directed to promoting use of i3's online sportsbook alongside some combination of Dan's name, image, *and/or the Goat Skull logo*.") (emphasis added).  Bilzerian never once complained about i3's use of the Goat Skull during this time.  Grant Decl. ¶ 15.

### D.    The Canadian Action

Due to Bilzerian's failures to sufficiently promote i3 pursuant to the Master Agreement, and his contracting to provide similar services to one of i3's competitors, their relationship began to deteriorate in late 2020.  Grant Decl. ¶ 16.  Accordingly, i3 severed its relationship with Bilzerian in or around December 17, 2020, including by cancelling the shares previously allocated to him pursuant to the Master Agreement.  *Id.*; *see also* Canadian Complaint ¶ 53 (alleging "i3 announced that it had severed its relationship and cancelled [Bilzerian's] shares.").  i3 subsequently ceased all new use of the Goat Skull.  Grant Decl. ¶ 17.  i3 also removed the Goat Skull from the Blitzbet Site and Blitz Poker Site. *Id.* ¶ 18.  Disputes ensued, culminating with Bilzerian initiating the Canadian Action on April 16, 2021. *Id.* ¶ 19; Schachter Decl., Ex. 2.

Bilzerian bases i3's liability in the Canadian Action on, *inter alia*, alleged breach of the Master Agreement, and unauthorized association with Bilzerian, including through use of the Goat Skull. Bilzerian specifically complains that i3's older authorized uses of the Goat Skull online will unjustly enrich i3 by causing consumers to continue associating Bilzerian with i3.  *See* Canadian Complaint ¶ 31 ("all of the above posts remain publicly accessible . . . and all content, including . . . [the] Goat Skull logo, remain on these posts."); *id.* ¶ 32 ("As a result of the above . . . [consumers] may continue to be attracted to use [i3's] services because of i3's association with Dan."); *id.* ¶ 41 ("i3 continued to promote Blitzpoker.com's association with Dan and his brand . . . *by depicting Dan's copyrighted Goat Skull logo* . . . until quite recently.") (emphasis added).

---

[15] In social media parlance, a "like" is one user's positive response to another user's post.  The term is so well understood that even the Supreme Court of the United States has used it without the need for further explanation.  *See, e.g.*, *Packingham v. North Carolina*, 137 S. Ct. 1730, 1742 (2021) ("Users can upload a picture and some basic information about themselves, and other users can see their aggregated comments and 'likes.'").  Thus, when Bilzerian admits that he "liked" one of i3's posts displaying the Goat Skull, he necessarily admits that he both saw and approved of i3's use.

The Master Agreement, including i3's use of the Goat Skull, is at issue in the Canadian Action because Bilzerian put it at issue.  And the extent to which i3 was, is, or ever will be permitted to use the Goat Skull (or any derivation thereof) will be determined by the Ontario Superior Court under Canadian law, which governs the Master Agreement.  *See* BDA § 21 ("This Agreement will be governed by, and interpreted and enforced in accordance with, the laws in force in the Province of British Columbia (excluding any rule or principle of the conflict of laws which might refer such interpretation to the laws of another jurisdiction) and the laws of Canada applicable therein."); SMIA § 10.5 ("The provincial laws of British Columbia and the federal laws of Canada govern this Agreement."); Amendment § 9 ("This Letter Agreement shall be governed by and construed in accordance with the laws of the province of British Columbia and the federal laws of Canada applicable therein.").  Moreover, the Master Agreement's forum selection clause requires adjudication of disputes in Canada.  *See* BDA § 21 (irrevocably submitting "to the exclusive jurisdiction of the courts" in Canada for "any matters" arising under or relating to the Master Agreement).

**E.     The Instant Action**

This action was filed six months after the Canadian Action.  The sole cause of action asserted is for copyright infringement based on the same conduct complained of in the Canadian Action: i3's use of the Goat Skull in connection with promoting its online gambling services.  *Compare* Canadian Complaint ¶ 41 ("i3 continued to promote Blitzpoker.com's association with Dan [Bilzerian] and his brand . . . by depicting Dan's copyrighted Goat Skull logo") *with* Complaint ¶ 15 ("[i3's] use of the [Goat Skull] Copyrights and designs associates i3 with [Bilzerian]. . . thereby causing Blitz and its principal harm.").  *Compare also* Canadian Complaint ¶ 31 (alleging that i3 continues to display the Goat Skull online) and Complaint ¶ 38 (alleging that i3 "continues to publicly display an unauthorized reproduction of the [Goat Skull]" online).

The Complaint specifically calls out the i3 Site, the Blitzbet Site, and the Blitz Poker Site.  Complaint ¶¶ 4-6, 11-14.[16]  Neither the Blitzbet Site  nor the Blitz Poker Site are directed, or even available, to U.S. consumers.  Grant Decl. ¶¶ 5, 7, 20.  Those sites are exclusively directed to residents

---

[16] The Complaint also refers to blitzbet.com at ¶ 6, but there is no content at that domain.  *See* Grant Decl. ¶ 6; Schachter Decl., Ex. 4; Rulis Decl., Ex. 1.

of Canada and India respectively.  *Id.*  Further, neither the Blitzbet Site nor the Blitz Poker Site presently contains the Goat Skull or anything that resembles the Goat Skull.  *Id.* ¶¶ 17, 18; Schachter Decl., Exs. 5, 6; Rulis Decl., Exs. 2, 3.  And the i3 Site isn't directed to consumers at all; it is a purely informational site about i3 and its business.  Grant Decl., ¶ 10.

The only thing distinguishing this action from the Canadian Action is that Bilzerian brought this action in the name of his LLC instead of himself.  But this is a distinction without a difference because, as noted, Plaintiff is controlled entirely by Bilzerian.  Allowing this action to proceed concurrently with the Canadian Action poses a substantial risk of inconsistent obligations or double recovery.  Bilzerian could end up recovering or obtaining different rulings here and in the Canadian Action based on the same facts and issues.

### III.

### ARGUMENT

**A.    This Court Should Dismiss Under the Doctrine of *Forum Non Conveniens*.**

Dismissal for *forum non conveniens* is appropriate when "the defendant establishes (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favor dismissal."  *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017) (citation and internal quotation marks omitted); *Takiguchi v. MRI Int'l, Inc.*, 2015 WL 6661479, at *2 (D. Nev.) (Oct. 29, 2015) (McKibben, J.) (same).  "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011); *Takaguchi*, 2015 WL 6661479, at *3 (same) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)).

Courts take a broad view of what constitutes a "satisfactory remedy"—"[t]ypically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015) (quoting *Carijano*, 643 F.3d at 1226).  "That the law, or the remedy afforded, is less favorable in the foreign forum is not determinative.  A foreign forum must merely provide 'some' remedy."  *Id.*

### 1. Canada Is an Adequate Alternate Forum.

Canada is a more than adequate alternative forum for resolving the purely contractual question of i3's authorization to use the Goat Skull, especially since it is a question of Canadian contract law. *See Moss v. Tiberon Minerals Ltd.*, 334 Fed. Appx. 116, at 117 (9th Cir. 2009) ("We cannot say that the district court abused its discretion, especially in light of the Ontario choice-of-law provision to which the parties agreed in the contracts at issue."). As discussed, the Master Agreement calls for application of British Columbian provincial law and Canadian federal law, and adjudication of any disputes *in Canada. See Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.") (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)).

In addition, i3 is amenable to service in Canada, clearly, as it is already defending an action involving its use of the Goat Skull in the Canadian Action. And Canadian law offers a satisfactory remedy in the event that any agreement between i3 and Bilzerian is deemed to have been breached. This is more than sufficient for *forum non conveniens* purposes. *See Ranza*, 793 F.3d at 1077. Indeed, many district courts within the Ninth Circuit have found that the Canadian judicial system provides an adequate alternative forum for breach of contract and related claims. *See Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at \*4 (N.D. Cal. Aug. 10, 2021) (collecting cases); *see also Jovanovic v. BluForest, Inc.*, 2013 WL 129427 (D. Nev. Jan. 9, 2013) (Hicks, J.) (finding Canada more appropriate forum than D. of Nev. in breach of contract action).

### 2. The Private Interest Factors Strongly Favor Dismissal.

The *forum non conveniens* inquiry weighs both public interest and private interest factors. The private interest factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Juniper Networks*, 2021 WL 3514103 at \*7 (quoting *Ayco Farms*, 862 F.3d at 950); *see also Jovanovic*, 2013 WL 129427 at \*1 (same).

i3 is based in Canada and has no connection to Nevada.  Complaint ¶ 3; Grant Decl. ¶¶ 3-5, 7, 8, 20-23.  i3's business is in Canada, it operates in Canada and India, and all of its employees are in Canada, India, Cost Rica, and the United Kingdom.  Grant Decl. ¶¶ 3-5, 7, 8, 20-23.  To be sure, *all* use of the Goat Skull complained of by Bilzerian in the Canadian Action and in this action occurred in Canada and India by Canadian and/or Indian employees of i3.  *Id.* ¶ 23.  Similarly, the Master Agreement was negotiated in Canada by Canadian employees of i3.  *Id.*  Thus, no i3 witness with personal knowledge of any such conduct is in Nevada (or anywhere else in the U.S.).  *Id.*  Nor are any related documents.  *Id.  See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) ("balance of the private interest factors favored dismissal" given that "all of the records and the majority of witnesses involved" in alleged conduct were in alternate forum in which parallel proceeding was ongoing).

The Master Agreement has a Canadian forum selection clause.  *See* BDA § 21.  And Bilzerian represented, and i3 believed, that Bilzerian was a California resident during all negotiations.  *See* SMIA at 1 ("This Agreement is made between [i3] . . . and Dan Bilzerian, of 10979 Chalon Road, Bel Air, California, U.S.A.); BDA at 1 (addressed to "Dan Bilzerian 10979 Chalon Road Bel Air, CA USA"); Amendment at 1 (same).  Thus, when Bilzerian granted i3 the right to use the Goat Skull, and when he "liked" i3's use of the Goat Skull, he did so from California.  Given the Canadian forum selection clause, and the place of Bilzerian's residence during the relevant period, i3 had no reason to believe that it would ever be called to appear in a court anywhere in the United States, let alone Nevada in particular.

Although Plaintiff is allegedly located in Nevada, given that Bilzerian controls it, Plaintiff's relationship to the case is tenuous at best.  The only actual conduct at issue is that of i3 and Bilzerian, not Plaintiff.  And even assuming that Bilzerian currently resides in Nevada, he did not reside there during the period in which all relevant conduct took place.  In any event, as Bilzerian's LLC, Plaintiff should also be bound by the Master Agreement's Canadian forum selection clause.  *See Manetti-Farrow, Inc. v. Gucci Amer., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.") (citations omitted).

Moreover, as the founder and CEO of the Canada-based, Canadian stock exchange-traded Ignite, Bilzerian is clearly "at home" in Canada.  That, and the fact that he already filed the Canadian Action, make clear that there will be no difficulty or great expense causing him to appear as a witness in the Canadian Action.  *See Carijano*, 643 F.3d at 1225 (*forum non conveniens* dismissal warranted where defendant company was "amenable to process in Peru based on [its] past activities in the country, as well as its stipulation to service of process and consent to jurisdiction there").

In contrast, this Court has no power to compel the appearance of any unwilling i3 witnesses, as all are in Canada and India, and none are within this Court's jurisdiction.  The Ninth Circuit has upheld dismissal on *forum non conveniens* grounds based on a far less pointed lack of amenability to process than exists here.  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (amenability to process factor favored dismissal because process for obtaining testimony of non-U.S. witnesses in U.S. court system was "more cumbersome" than its analog in alternate forum).  And even if the Court could compel the attendance of i3's witnesses, requiring literally all of them to travel to Nevada from Canada and India, would be a significant burden and expense on them and i3.

Accordingly, the weight of the private interest factors strongly favors dismissal.  Most parties and witnesses reside in Canada and India.  Nevada would be an extremely inconvenient forum for all but Plaintiff (*i.e.*, Bilzerian), whereas litigating in Canada would not be inconvenient for any party.  All physical evidence and other sources of proof, including witnesses, are in Canada and India.  No unwilling witnesses on i3's side can be compelled to testify.  The cost of bringing i3's witnesses to trial in Nevada is significant, whereas the cost of bringing Bilzerian to trial in Canada (where he already commenced an action and regularly appears in connection with his role as the CEO of a Canadian company) would be insignificant.

In short, trial of this case in Canada would be easy, expeditious, and inexpensive, whereas the opposite is true in Nevada.

### 3.    The Public Interest Factors Strongly Favor Dismissal.

The public interest factors considered in the *forum non conveniens* inquiry are: "(1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and

juries; (4) the amount of congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum." *Juniper Networks*, 2021 WL 3514103, at *5 (citation and alterations omitted).

Nevada has no meaningful interest in this case. All relevant conduct occurred in Canada and India, and no conduct occurred in Nevada. Plaintiff does not even allege that anyone in Nevada ever viewed i3's alleged use of the Goat Skull, let alone that they viewed it as a result of i3's conduct in Nevada or anywhere else in the United States.[17] In contrast, Canada has a strong interest in applying its law to a contract between parties who transacted in Canada and chose Canada's laws and courts for resolution.

Further, although this Court might be more familiar with U.S. copyright law, the Canadian court is more familiar with the Canadian contract law that will be used to determine the scope of i3's authorization to use the Goat Skull, which will in turn determine whether Plaintiff even has a copyright claim to bring in the first place. *See Seals-McClellan v. Dreamworks, Inc.*, 120 Fed. Appx. 3, *4 (9th Cir. 2004) ("To prevail on a copyright infringement claim, a plaintiff must establish ownership and unauthorized copying of protected expression."). Ninth Circuit precedent generally favors dismissal on *forum non conveniens* grounds of cases that would require the application of foreign law, given the courts' "preference for having a forum apply law with which it is familiar." *Copitas v. Fishing Vessel Alexandros*, 20 F. App'x 744, 747 (9th Cir. 2001). Thus, Canada's stronger, and primary, interest militates in favor of dismissal, or at a minimum, a stay pending resolution of the Canadian Action. Only after such resolution could this Court evaluate Plaintiff's copyright claim based on the scope of i3's authorization as determined in the Canadian Action.

A Nevada jury should not be empaneled and burdened with this dispute. There is no reason to convene a Nevada jury to consider conduct occurring wholly outside of Nevada, and involving a Canadian agreement, Canadian conduct, Canadian and Indian witnesses, and Canadian law. And given the backlog of cases already before this Court as a result of the COVID-19 pandemic, there is no reason to add to that congestion with this case in which Nevada has no genuine interest anyway.

---

[17] Nor could Plaintiff presently make any such allegation because i3 no longer uses the Goat Skull or any design similar to the Goat Skull on any of its websites. Grant Decl. ¶¶ 17, 18; Schachter Decl., Exs. 5, 6; Rulis Decl., Ex. 2, 3.

The costs of resolving the dispute are significantly higher in this forum than in Canada.  In addition to extreme travel expenses for all i3 witnesses, i3 has to pay U.S. counsel and Canadian counsel to resolve the same issues in different forums simultaneously.  i3 will also have to pay for basic litigation defense tactics in the U.S. that it would not have to deal with in Canada, including objecting to Plaintiff's attempts to compel the testimony of witnesses outside of this Court's jurisdiction, retaining an expert to educate the Court on Canadian law (which governs the Master Agreement), and mounting a defense to copyright infringement that would not even be necessary and could be entirely avoided upon a finding that i3 was authorized to make the use complained of.

The costs of a needless copyright defense alone would be extensive, including, *inter alia*, litigation over whether the Goat Skull is entitled to copyright protection in the first place, whether Plaintiff's copyright registration is valid, whether i3 infringed, whether i3 infringed in the United States, etc.  Again, all of this litigation could be avoided or significantly reduced by resolution of the Master Agreement in the Canadian Action.  The significantly more expensive dispute that i3 would have to litigate in Nevada as opposed to Canada cannot be justified, especially when weighed against the non-existent to minimal interest Nevada has in this case.  It is clear that these significant expenses and burdens are precisely why Bilzerian has brought this action.

Accordingly, the public interest factors strongly favor dismissal.  Nevada has no interest in this lawsuit whereas Canada has a significant interest.  This Court has less familiarity with the governing law than the court in the Canadian Action.  Adding this case to this Court's docket places an unnecessary burden on this Court and local citizens empaneled for a jury, adding to an already congested docket due to the COVID-19 pandemic, and the costs of resolving this dispute, which is entirely unrelated to this forum, will be significantly greater here than in Canada.  *See Ayco Farms*, 862 F.3d at 951 (dismissal warranted where forum state "has an insufficient interest in the case to justify the significant burden on a [local] jury," in part because the "dispute overwhelmingly concerns events in other states and countries").

This case is not unlike the one before this Court in *Jovanovic*, 2013 WL 129427.  There, a Canadian court had jurisdiction over the dispute, the plaintiff was an officer and director of a Canadian corporation, the defendant had its corporate offices and headquarters in Canada and agreed to service of

process there, the majority of witnesses and physical evidence was in Canada, making a Canadian court more convenient to compel discovery and witness testimony, and Canadian law governed the underlying agreements.  As a result, the Court held that "Canada is the more appropriate and convenient forum" and dismissed the action without prejudice.  *Id.* at *1.  In every way, the same is true here.

Having clearly established that Canada is an adequate alternative forum (in which the same issues are already at issue in the prior pending Canadian Action) and that the private and public factors favor dismissal, this action should be dismissed under the doctrine of *forum non conveniens*.

**B.     The Court Should Dismiss this Action for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6).**

Copyright infringement requires copyright ownership and unauthorized copying.  *See Seals-McClellan*, 120 Fed. Appx.3 at *4.  Here, documentary evidence referred to in the Complaint makes clear that Plaintiff cannot meet that standard because it expressly authorized i3 to use the Goat Skull.  *See* Complaint ¶¶ 26-28 (concerning the Master Agreement, which expressly authorizes i3's use of the Goat Skull);[18] *id.* ¶ 29 (acknowledging assent to i3's use of the Goat Skull by conclusorily alleging that "[a]ny implied right to use the Copyrights was terminated").[19]  The Court can consider these agreements because, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is free to "consider documents 'incorporated into the complaint by reference.'"  *J. K. J. v. City of San Diego*, --- F.4th ----, 2021 WL 5292193, at *4 (9th Cir. Nov. 15, 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

Plaintiff's only allegation is that i3 used the Goat Skull during a period in which it was undisputedly authorized to do so.  The Complaint alleges that i3 posted the Goat Skull on the i3 website no earlier than August 26, 2019 and no later than August 27, 2020 (Complaint ¶ 25), *i.e.*, after Bilzerian first authorized i3's use in the Master Agreement, and before any potential termination following i3's

---

[18] *See* SMIA, § 8.1 (giving i3 "a worldwide, non-exclusive, irrevocable, perpetual license to use" the Goat Skull "in order to promote the brand of Blitzbet.").

[19] *See also* Canadian Complaint ¶ 29(c) (Bilzerian admitting that he "liked" i3's post featuring the Goat Skull).

1    cancellation of Bilzerian's shares in i3's business.  Accordingly, there are no allegations of actual

2    unauthorized use in the Complaint.

3         Further, U.S. Copyright laws do not apply extraterritorially.  *See EEOC v. Arabian Amer. Oil*

4    *Co., (Aramco)*, 499 U.S. 244, 248 (1991).  ("[I]t is a long-standing principle of American law that

5    legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial

6    jurisdiction of the United States."); *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088,

7    1095096 (9th Cir. 1994) ("The undisputed axiom that the United States' copyright laws have no

8    application to extraterritorial infringement predates the 1909 [Copyright] Act and. . . the principle of

9    territoriality consistently has been reaffirmed.") (citation and internal quotation marks omitted).

10        Here, the only infringement that Plaintiff alleges occurred in the U.S. generally (but never, it

11   bears repeating, in Nevada specifically) is that the Goat Skull is displayed whenever a U.S. user

12   accesses i3's Blitz Poker Site.  *See* Complaint ¶ 14.  But the Complaint, as well as the agreements and

13   websites referenced therein, make clear that i3 never committed any act of infringement in the United

14   States.  As already established, i3 only ever used the Goat Skull during its authorized license period,

15   and there is no allegation to the contrary.  And even if i3 *had* affirmatively posted the Goat Skull

16   following the alleged termination of i3's license (which did not happen and is not alleged), it would

17   have committed that act *in Canada* or India where i3's employees are located.  The mere fact that the

18   Goat Skull is theoretically viewable in the United States by virtue of actions taken outside of the United

19   States is not by itself sufficient to invoke application of the Copyright Act against a foreign entity.  *See*

20   *State Street Global Advisors Trust Co. v. Visbal*, 431 F. Supp.3d 322, 339 (S.D.N.Y.) ("The adoption of

21   a rule that would give rise to a copyright claim against a foreign actor solely on the basis of the fact that

22   a U.S. copyrighted image was posted on the internet—and was therefore 'accessible' within the United

23   States would undermine the extraterritorial limitations on U.S. copyright law.") (citation omitted).  In

24   *State Street*, the copyright claim was dismissed under 12(b)(6) because nothing more than the ability to

25   access the allegedly infringing work in the U.S. was alleged.  *Id.*  Plaintiff's claim should be dismissed

26   because the same is true here.

27        Copyright infringement requires unauthorized copying.  The agreements referred to in the

28   Complaint show that Plaintiff cannot establish unauthorized copying, let alone that i3 committed any

1    unauthorized acts within the United States.  As a result, the Complaint should be dismissed for failure

2    to state a claim under Fed. R. Civ. P. 12(b)(6).

3    **C.     The Court Should Dismiss this Action for Lack of Personal Jurisdiction Over i3.**

4          Rule 12(b)(2) requires a court to dismiss a case when it lacks personal jurisdiction over the

5    defendants.  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

6    the burden of demonstrating that jurisdiction is appropriate."  *Morrill v. Scott Fin. Corp.*, 873 F.3d

7    1136, 1141 (9th Cir. 2017) (quotation marks omitted).  "Personal jurisdiction over an out-of-state

8    defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does

9    not violate federal due process."  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir.

10   2020).  However, "[w]here a state has a 'long-arm' statute providing its courts jurisdiction to the fullest

11   extent permitted by the Due Process Clause of the Fourteenth Amendment, as Nevada does, a court

12   need only address federal due process standards."  *Southport Lane Equity II, LLC v. Downey*, 177 F.

13   Supp. 3d 1286, 1290 (D. Nev. 2016) (internal citations omitted); *see* Nev. Rev. Stat. § 14.065(1) ("A

14   court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent

15   with the Constitution of this state or the Constitution of the United States.").

16         There are two forms of personal jurisdiction that a forum "may exercise over a nonresident

17   defendant—general jurisdiction and specific jurisdiction."  *Boschetto v. Hansing*, 539 F.3d 1011, 1016

18   (9th Cir. 2008).  "'General jurisdiction requires affiliations so continuous and systematic as to render

19   the foreign corporation essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise

20   in that State.'  Such contacts must be 'constant and pervasive.'"  *Ranza*, 793 F.3d at 1069 (internal

21   citations omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122, 133 n.11 (2014).  By contrast,

22   specific jurisdiction is present where the plaintiff's cause of action arises out of a defendant's forum-

23   related activities such that "under the totality of the circumstances the defendant could reasonably

24   anticipate being called upon to present a defense in a distant forum."  *Evanston Ins. Co. v. W. Cmty.*

25   *Ins. Co.*, 13 F. Supp. 3d 1064, 1069 (D. Nev. 2014) (quotation marks omitted) (quoting *FDIC v.*

26   *British–American Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987)).

27         Plaintiff has failed to allege facts justifying this Court's assertion of either general or specific

28   jurisdiction over i3.

1         ***1.       There Is No General Jurisdiction Over i3.***

2         General jurisdiction exists only when the defendants are "essentially at home in the forum

3    State," meaning "the[ir] place of incorporation and principal place of business." *Daimler AG v.*

4    *Bauman*, 571 U.S. 117, 137, 139 (2014). "[I]t is '*incredibly difficult* to establish general jurisdiction

5    [over a corporation] in a forum other than the place of incorporation or principal place of business.'"

6    *See*, *e.g.*, *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (emphasis added) (quoting

7    *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); *Ranza*, 793 F.3d at 1069 ("Only

8    in an 'exceptional case' will general jurisdiction be available anywhere else" besides a corporation's

9    "place of incorporation and its principal place of business.") (internal citations and quotation marks

10   omitted).

11        i3 is not incorporated in Nevada, nor does it maintain its principal place of business there. *See*

12   Complaint ¶ 3; Grant Decl. ¶ 3. Meanwhile, in support of its claim of general jurisdiction, Plaintiff sets

13   out only a single generic allegation that "i3 has substantial, continuous, and systemic [*sic*] contacts with

14   the State of Nevada." Complaint ¶ 16. This falls well short of what is necessary to confer general

15   personal jurisdiction over i3 upon this Court. *See Edwards v. Juan Martinez, Inc.*, 506 F.Supp.3d 1061

16   (D. Nev. 2020) ("conclusory assertions" that neglect to identify what the defendant's "actual contacts

17   *are*" "fail to support general jurisdiction") (emphasis in original). This Court does not have general

18   jurisdiction over i3.

19        ***2.       There Is No Specific Jurisdiction Over i3.***

20        Specific personal jurisdiction requires a plaintiff to demonstrate three things:

21             (1) the defendant must either "purposefully direct his activities" toward the

22             forum or "purposefully avail himself of the privileges of conducting activities in the forum";

23             (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and

24             (3) "the exercise of jurisdiction must comport with fair play and substantial

25             justice, i.e. it must be reasonable."

26   *AMA Multimedia*, 970 F.3d at 1208 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,

27   1068 (9th Cir. 2017)).

28

"The exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue," and for "copyright and trademark infringement claims, which sound in tort," the Ninth Circuit "appl[ies] a 'purposeful direction' analysis" as to the first of the three prongs. *AMA Multimedia*, 970 F.3d at 1208 (internal citations and quotation marks omitted). And "[w]here allegedly tortious conduct takes place outside the forum and has effects inside the forum, [the Ninth Circuit] has examined purposeful direction using an 'effects test'" under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1208-09.

Fundamentally, in assessing whether a defendant purposefully directed its activities toward the forum, a court must "look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1070 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)). For this reason, merely alleging that a defendant "willful[ly] infringe[d] . . . a plaintiff's copyright" and that it had "knowledge of both the existence of the copyright and the forum of the copyright holder [neither of which is actually alleged by Plaintiff]. . . without more, is insufficient to comply with due process" and therefore does not establish specific jurisdiction. *Id.* at 1069, 1070 (internal citations and quotation marks omitted).

Here, Plaintiff attempts to establish personal jurisdiction over i3 by alleging that i3 "knew that [its] Website incorporated the Copyrights which belonged to Blitz" (Complaint ¶ 13); that "by promoting those sites to customers in the United States, i3 is committing infringement here in the United States" (Complaint ¶ 14); and that i3's use of the Copyrights "was and is purposefully directed at Nevada residents" in "an attempt to gain . . . online gaming customers in Nevada" (Complaint ¶ 15).

"Passive websites do not automatically confer jurisdiction anywhere they are viewable." *Bellagio, LLC v. Bellagio Car Wash & Exp. Lube*, 116 F. Supp. 3d 1166, 1173 (D. Nev. 2015) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997)). Nor, for that matter, do any websites that are less than fully interactive. "With respect to an entity's online presence, the Ninth Circuit has adopted a 'sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect.'" *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1184 (D. Nev. 2018) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)). This

1  approach "'recognize[s] a distinction between passive websites, which simply display information, and

2  interactive websites, which allow customers to exchange information with a business.'" *Id.* at 1184

3  (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)).  "Where a defendant's

4  website is either passive or falls somewhere in the middle of the sliding scale, Courts require

5  'something more' to establish specific jurisdiction." *Id.*  And in the copyright context, the Ninth

6  Circuit has "defined the 'something more' that is needed to assert specific jurisdiction as 'express

7  aiming' at the forum state." *JoshCo Tech, LLC v. Does 1-4*, 2020 WL 6273897, at *5 (D. Nev. Oct. 26,

8  2020)  (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006)).

9         Plaintiff's allegations do not come close to meeting these standards.  Plaintiff makes no

10  allegations establishing or even suggesting that any of i3's websites are anything other than a "passive

11  website" to the citizens of Nevada.  As discussed, the i3 Site is purely informational and is in no way

12  aimed at Nevada, and the Blitzbet Site and Blitz Poker Site are directed, and *exclusively available*, to

13  residents of Canada and India.  Grant Decl. ¶¶ 4, 5, 7, 10, 20, 22.

14         Because i3's websites are passive—or at the absolute most fall "somewhere in the middle of the

15  sliding scale," *Prescott*, 341 F. Supp. 3d at 1184—for personal jurisdiction purposes, then the potential

16  ability of Nevada citizens to view the copyrighted material at issue (which no Nevada citizen is alleged

17  to have done) plainly does not suffice to establish purposeful direction, and "something else" (*i.e.*,

18  express aiming) is needed.  Here too, Plaintiff's allegations fall short of the mark.  Specifically,

19  Plaintiff's allegations that i3's alleged use of the copyrighted material "was and is purposefully directed

20  at Nevada residents" in an attempt to "associate[] i3 with Blitz's principal [who is] located in Nevada"

21  (Complaint ¶ 15) is entirely conclusory, and this Court is not required to accept them as true for the

22  purposes of adjudicating this motion.  *See Chavez v. Robinson*, 12 F.4th 978, 985 (9th Cir. 2021) ("We

23  accept as true well-pleaded factual allegations, but not threadbare recitals of the elements of a cause of

24  action, supported by mere conclusory statements.") (quotation marks omitted).  Plaintiff has failed

25  entirely to set out plausible allegations that i3 purposefully directed its website to any state within the

26  U.S., let alone Nevada specifically.  *See JoshCo Tech, LLC*, 2020 WL 6273897, at *5 ("[n]ot all

27  material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at

28

every state in which it is accessed").  Rather, as noted, i3's services are available only in Canada and India.  Grant Decl. ¶ 20.

For these reasons, there is no specific personal jurisdiction over i3 either.

## IV.

## CONCLUSION

For the reasons provided, this Court should grant i3's motion and dismiss this action in its entirety.  In the alternative, the Court should stay the action until after resolution of the prior pending Canadian Action.


Dated:  December 6, 2021

Respectfully submitted,

*/s/ Nathanael R. Rulis*
Nathanael R. Rulis, Esq., SBN 11259
n.rulis@kempjones.com
Madison Zornes-Vela, Esq., SBN 13626
m.zornes-vela@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
(702) 385-6000

Jonathan P. Wolfert (*pro hac vice* application forthcoming)
jwolfert@seyfarth.com
Jeremy Schachter (*pro hac vice* application forthcoming)
jschachter@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Phone: (212) 218-5500

*Attorneys for Defendant Interactive Games Technologies Inc.*

1

**PROOF OF SERVICE**

2

I hereby certify that on the 6th day of December, 2021, I served a true and correct copy of the

3

foregoing **DEFENDANT INTERACTIVE GAMES TECHNOLOGIES INC.'S MOTION TO**

4

**DISMISS OR OTHERWISE STAY THIS ACTION** via the Court's electronic filing system to all

5

parties on the e-service list.

6

7

_/s/ Pamela Montgomery_
An Employee of Kemp Jones, LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28